UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDREW M. TAYLOR,

                        Plaintiff,

v.                                                    6:02-CV-0753
                                                      (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

APPEARANCES:                                          OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    PETER L. WALTON, ESQ.
Attorneys for Plaintiff
407 Sherman Street
Watertown, New York 13601-9990

HON. GLENN T. SUDDABY                                 WILLIAM H. PEASE, ESQ.
United States Attorney for the                        Assistant United States Attorney
  Northern District of New York
Attorney for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to me for report and recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3.

## PROCEDURAL HISTORY

        Plaintiff filed an application for disability insurance benefits on December 7, 1998.

(Administrative Transcript ("T") at 107.)  The application was denied initially and upon

reconsideration.  (T. at 83, 88.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 1, 1999.  (T. at 29-74.)  On May 3, 2000, the ALJ issued a decision finding that plaintiff was not disabled.  (T. at 14-21.)  Plaintiff appealed to the Appeals Council and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 10, 2002 .  (T. at 6.)

Plaintiff commenced this action on June 7, 2002.  (Dkt. No. 1.)

## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

(1) The ALJ erred in failing to properly consider the non-exertional limitations caused by plaintiff's irritable bowel syndrome.  (Dkt. No. 9 at 12.)

(2) The ALJ failed to properly consider and evaluate the expert opinions of record.  (Dkt. No. 9 at 15.)

(3) The ALJ's finding that plaintiff could perform light work is not supported by substantial evidence.  (Dkt. No. 9 at 18.)

(4) The ALJ erred in failing to obtain the testimony of a vocational expert.  (Dkt. No. 9 at 21.)

(5) The ALJ erred in concluding that plaintiff was not credible.  (Dkt. No. 9 at 22.)

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A) (2004).[1]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2004).  "If at any

step a finding of disability or non-disability can be made, the SSA will not review the claim

further."  *Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. 376, 379-80 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R. §§ 404.1520(b), 416.920(b).]  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R. §§ 404.1520(c), 416.920(c).]  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§ 404.1520(d), 416.920(d).]  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be

---

[1]  As of September 25, 2003, revisions were made to certain sections of the Code of Federal
Regulations, however, the revisions have no effect on the outcome of this Report and Recommendation.

> disabled.[2]  If the claimant survives the fourth stage, the fifth, and
> final, step requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing
> other jobs existing in significant numbers in the national economy.
> [20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).]

*Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. at 379-80 (footnote omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v.*

*Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the

plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the

defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs

which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540

U.S. 20, 124 S. Ct. at 379-80; other citations omitted).

## I.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 U.S. Dist. LEXIS 6253, at *11-*12 (S.D.N.Y. Apr.

15, 2003); *Serrano*, 2003 WL 22683342, at *10-*11; *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing

court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817

F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with

---

[2]  The step-four instructions to the claimant read as follows: "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."  20 C.F.R. §§ 404.1520(e), 416.920(d) (2004) (footnote edited to reflect current language).

4

sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2004); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**II.**    **Analysis**

   **A.**    **Non-Exertional Limitations Caused by Irritable Bowel Syndrome**

      1.    Severity of Plaintiff's Irritable Bowel Syndrome

Plaintiff argues that the ALJ erred in not finding that plaintiff's irritable bowel syndrome was a severe impairment, and in not finding that the non-exertional limitations imposed by the

irritable bowel syndrome, combined with his back problems, rendered plaintiff disabled.  (Dkt. No. 9 at 12-13.)  Defendant argues that there is not sufficient evidence during the relevant time period which utilizes acceptable clinical and laboratory techniques and establishes plaintiff's irritable bowel syndrome as a medically determinable impairment.  Thus, defendant argues, plaintiff has not established that his irritable bowel syndrome is a severe impairment.  (Dkt. No. 11 at 15.)  Furthermore, defendant argues that assuming plaintiff could establish that his irritable bowel syndrome is a severe impairment, plaintiff has failed to show that the impairment significantly limited his ability to perform work-related activities.  (Dkt. No. 11 at 16.)

In his decision, the ALJ noted that at the time of the hearing plaintiff was being treated and was taking medication for irritable bowel syndrome and had no "diarrhea, cramping, or other undesirable side effects."  (T. at 16.)  Furthermore, the ALJ found that even though plaintiff received treatment, the medical records failed to indicate a history of severe irritable bowel syndrome.  (*Id.*)  Thus, the ALJ concluded that plaintiff's irritable bowel syndrome was not a severe condition and did not significantly limit his ability to work.  (*Id.*)  Furthermore, the ALJ stated that plaintiff had "no significant non-exertional limitations which narrow the range of work he can perform."  (T. at 18.)

The record contains several references to plaintiff's irritable bowel syndrome.  At an August 20, 1998 neurological consultation, Michael C. Shende, M.D. noted that "[p]laintiff gives a history of irritable bowel syndrome."  (T. at 205.)  Scott Gingold, M.D. also inquired about plaintiff's past, family, and social history at an October 8, 1998 appointment.  (T. at 214.)  In noting plaintiff's history, Dr. Gingold's report reflects who plaintiff's primary care physicians were, that plaintiff had irritable bowel syndrome, occasionally had bronchitis, and was otherwise

6

healthy with no hypertension, heart disease, or diabetes.  (*Id.*)  At his initial evaluation with

Thomas D. Masten, M.D. on October 8, 1998, plaintiff reported that his past medical history

included irritable bowel syndrome and that he followed a modified diet with high fiber.  (T. at

211.)  Additionally, plaintiff stated he had increased frequency of bowel movements at times.

(*Id.*)

When Julie Lapointe, M.D. conducted a full physical examination of plaintiff on

Spetmeber 24, 1996, she noted that "[t]he patient complains of his stomach rolling and growling,

frequently and very loudly.  Also complains of loose stools, occasionally watery versus thick

liquid stools alternating with constipation and abdominal bloating and cramps which have been

progressive over the last few months."  (T. at 261.)  Plaintiff stated he made modifications to his

diet and was only taking ibuprofen on an as needed basis.  (*Id.*)  At a subsequent appointment,

Dr. Lapointe encouraged plaintiff to continue taking Metamucil[3] and to try other fiber

supplements.  (T. at 262.)

At his July 15, 1999 appointment with the office of Frank Rhode, M.D., plaintiff

complained of a history of irritable bowel syndrome, but admitted that he was "not really treating

that right now."  (T. at 257.)  Dr. Rhode's office prescribed Bentyl and at plaintiff's next

appointment he reported that the medication was helping with his irritable bowel syndrome.  (*Id.*)

There is substantial evidence contained in the record to support the ALJ's finding that

plaintiff's irritable bowel syndrome was not a severe impairment.  While it is true that there is

evidence of plaintiff's complaints of irritable bowel syndrome, it was plaintiff himself who

mentioned having irritable bowel syndrome when asked about his medical history.  However,

---

[3]  Metamucil is a widely known over-the-counter fiber supplement.

"[a] physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908 (2004).  While plaintiff's doctors noted that plaintiff claimed a history of irritable bowel syndrome, only one doctor (Dr. Rhode) prescribed medication, and upon taking the medication, plaintiff said it was helping the symptoms; specifically, plaintiff testified at his hearing that the medication "cut down the diarrhea, [and] some of the cramping" with no side effects.  (T. at 47, 257.)

Notably, Dr. Lapointe did not prescribe any medication; she told plaintiff to continue taking Metamucil and to try other fiber supplements.  (T. at 262.)  Perhaps most notable is the fact that although plaintiff complained to Dr. Rhode of a history of irritable bowel syndrome, plaintiff admitted that he was "not really treating that right now."  (T. at 257.)  Plaintiff's own decision to "not really treat" his irritable bowel syndrome does not correspond with plaintiff's statement that even with the medication, he needed to use the bathroom ten or more times a day. (T. at 68.)

Accordingly, there is substantial evidence in the record to support the ALJ's finding that plaintiff's irritable bowel syndrome was not a severe impairment.

2.    Non-Exertional Limitations in Combination with Exertional Limitations

Plaintiff further contends that regardless as to whether his irritable bowel syndrome was a severe impairment, the ALJ's failure to consider the irritable bowel syndrome in combination with the low back pain represents reversible error.  (Dkt. No. 9 at 13-14.)  Defendant argues that "the plain letter of the decision" evidences that the ALJ specifically considered plaintiff's low back pain together with the irritable bowel syndrome.  (Dkt. No. 11 at 17.)  Specifically,

defendant cites the ALJ's wording in the decision and his conclusion that plaintiff only had one severe impairment to show he considered both conditions: " . . . the claimant would have us believe that his **impairments** significantly limit his ability to perform even the slightest basic work activity . . . .  Having the capability to perform theses [sic] activities would indicate that the claimant may, in fact, be limited to some degree by his **impairments** . . ."  (Dkt. No. 11 at 17) (quoting T. at 18) (emphasis in plaintiff's brief).  Thus, defendant concludes that because the ALJ used the term "impairments," when evaluating the functional impact, but only found that plaintiff had one impairment, the ALJ clearly considered both conditions.  (*Id.*)

The Court finds this argument unpersuasive.  There was no specific discussion in the ALJ's decision as to the non-exertional impact of plaintiff's irritable bowel syndrome **and** plaintiff's back problems upon plaintiff's ability to work.  "[T]he combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe."  *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) (citing *De Leon v.  Secretary of Health and Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) ("It is the clear rule in this circuit that 'all complaints . . . must be considered together in determining . . . work capacity.'  Here, we have a record of four separate and distinct impairments. Neither the ALJ nor the Secretary, however, analyzed these impairments in combination.  For this reason, too, we reverse the decision below.") (citations omitted)).

Because the ALJ failed to consider the combined effect of plaintiff's irritable bowel syndrome and low back pain on his ability to work, the Court recommends remand.  As this Court is recommending affirmance of the ALJ's decision that plaintiff's irritable bowel syndrome

does not constitute a severe impairment, remand is solely for consideration of the combination of

impairments, unless, in the ALJ's discretion, further examination of the severity of plaintiff's

irritable bowel syndrome is warranted.

Additionally upon remand, under the holding in *Bapp v. Bowen*, the testimony of a

vocational expert may be necessary.  In *Bapp v. Bowen*, the Second Circuit stated:

> [T]he mere existence of a nonexertional impairment does not
> automatically require the production of a vocational expert nor
> preclude reliance on the guidelines.  A more appropriate approach
> is that when a claimant's nonexertional impairments significantly
> diminish his ability to work – over and above any incapacity
> caused solely from exertional limitations – so that he is unable to
> perform the full range of employment indicated by the medical
> vocational guidelines, then the Secretary must introduce the
> testimony of a vocational expert (or other similar evidence) that
> jobs exist in the national economy which claimant can obtain and
> perform.

*Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  *See also Davila v. Barnhart*, Civ. No. 03-

3981, 2004 U.S. Dist. LEXIS 14221, at *24-*25 (S.D.N.Y. Dec. 15, 2004).  Upon remand and

consideration of plaintiff's combination of impairments, the Court presumes that if the testimony

of a vocational expert (or other similar evidence) is necessary, it will be procured.

### B.    Treating Physician

Plaintiff argues that the ALJ's failure to consider the medical opinions of Dr. Rhode and

his physician's assistant, Matt Stock, constitutes reversible error.  (Dkt. No. 9 at 15-16.)  Plaintiff

also contends that the ALJ erred in adopting the opinions of non-treating, non-examining

physicians and in failing to properly consider all of Dr. Gingold's reports.  (*Id.* at 17.)

Defendant argues that it appears that Dr. Rhode did not sign the residual functional

capacity assessment ("RFC Assessment"), rather it was signed by Mr. Stock, who was in fact the

10

sole source of the opinion.  (Dkt. No. 11 at 19.)  Thus, defendant argues, because Mr. Stock is a

physician's assistant he is not a "treating source," but rather an "other" source, whose opinion is

not entitled to controlling weight but rather may assist an adjudicator in understanding how an

impairment(s) affects a claimant's ability to work.  (*Id.*)  Furthermore, defendant points out that

the ALJ's finding that plaintiff retained the residual functional capacity ("RFC") to perform light

work is supported by the opinions of Sury Putcha, M.D. and In T. Seok, M.D., non-treating, non-

examining physicians.[4]  (*Id.* at 20.)  Thus, defendant argues that the ALJ properly considered the

medical opinions and evidence contained in the record.

    The medical opinions of a treating physician[5] are given "controlling weight" as long as

they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2) (2004); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004) and *Torregrosa v. Barnhart*, Civ. No. 03-5275, 2004 U.S. Dist. LEXIS 16988, at *11

(E.D.N.Y. Aug. 27, 2004).  Accordingly, if the ALJ is not going to accord controlling weight to a

treating physician, the ALJ must examine several factors including: (1) the length of the

treatment relationship and frequency of examinations; (2) the nature and extent of the treatment

relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the

opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other

---

    [4]  Drs. Putcha and Seok completed a RFC Assessment of plaintiff.  (T. at 237-244.)  Three dates
and signatures appear on the last page of the form.  (T. at 244.)  Dr. Putcha signed the form on February
18, 1999 and April 14, 1999.  (*Id.*)  Dr. Seok signed and dated the form on June 16, 1999.  (*Id.*)

    [5]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical
source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment
relationship with the patient/plaintiff/claimant.  20 C.F.R. § 404.1502 (2004).

factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)(i)-(ii);

404.1527(d)(3)-(6) (2004).  "Where an ALJ fails to consider all of the relevant factors in deciding

what weight to assign the opinion of a treating physician, the ALJ's decision is flawed."  *Rivas v.*

*Barnhart*, Civ. No. 01-3672, 2005 WL 183139, at *22 (S.D.N.Y. Jan. 27, 2005) (citing *Schaal v.*

*Apfel,* 134 F.3d 496, 504 (2d Cir.1998)).

    1. <u>Dr. Rhode and Mr. Stock</u>

  Plaintiff argues that the ALJ erred by "completely ignor[ing]" and failing to mention the

medical opinions of one of plaintiff's treating physicians, Dr. Rhode.  (Dkt. No. 9 at 15.)

Furthermore, plaintiff argues that the ALJ committed reversible error in failing to consider or

mention the medical opinions of Dr. Rhode's physician's assistant, Mr. Stock.  (*Id.* at 16.)

Defendant argues that a physician's assistant is not a treating source and his opinions are not

entitled to controlling weight.  (Dkt. No. 11 at 19.)

  Curiously, both Dr. Rhode's and Mr. Stock's names appear on an October 14, 1999

complete medical report (T. at 252) and an October 14, 1999 RFC Assessment.  It appears as

though Mr. Stock signed the forms on behalf of Dr. Rhode, based on a comparison between Dr.

Rhode's signature on those forms and his handwritten notes regarding plaintiff's visits (T. at 257-

258).  However, this fact was not confirmed by the ALJ at the hearing or through further inquiry.

  While an opinion from a treating physician that is well-supported by medical evidence

and is not inconsistent with other substantial evidence contained in the record is given controlling

weight, an opinion of a physician's assistant **<u>may</u>** be used to show the severity of a claimant's

impairment(s) and the affect on his/her ability to work.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2), 404.1514(d)(1), 416.913(d)(1).  However, it is unclear whether the opinions

expressed in the complete medical report and the RFC Assessment are the opinions of Mr. Stock, Dr. Rhode, or both.  Because it is unclear whose opinions are expressed in those forms, it is unclear what weight to give the opinions.  *Colondres v. Barnhart*, Civ. No. 04-1841, 2005 U.S. Dist. LEXIS 754, at *25-*26 (S.D.N.Y. Jan. 18, 2005) (where the court stated it was unsure what weight to assign to a report signed and stamped by a registered physician assistant and the doctor's name was printed next to the signature).

In *Colondres v. Barnhart*, the ALJ dismissed the doctor's report because it was not supported by other evidence contained in the record.  *Id.* at * 25.  The court held that if the doctor was a treating physician, "the ALJ should have attempted to contact the physician to seek additional information before rejecting the opinion for lack of support."  *Id.* (citing 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled . . . we will first recontact your treating physician . . . to determine whether the additional information we need is readily available.").

Because the RFC Assessment is the only one contained in the record which was completed by an examining physician, what weight to accord it is of import.  In his decision, the ALJ did not cite to the RFC Assessment or mention that plaintiff had been treated by Dr. Rhode and Mr. Stock.  The ALJ should have clarified whose opinions were contained in the complete medical report and the RFC Assessment and accorded the opinions their proper weight. Accordingly, this Court recommends remand on this issue.

### 2.   Non-Examining, Non-Treating Physicians

Plaintiff also argues that the ALJ erred "in adopting the opinions of the state agency reviewing physicians over the opinion of the [plaintiff's] treating physician without analysis."

(Dkt. No. 9 at 17.)  Defendant contends that Dr. Putcha and Dr. Seok reviewed all evidence regarding plaintiff's lumbar injury, except for plaintiff's testimony and treatments notes from two visits with Dr. Rhode's office, before offering their opinions in the RFC Assessment.  (Dkt. No. 11 at 20-21.)  Furthermore, as state agency medical consultants are highly qualified experts in Social Security disability evaluation, defendant concludes that plaintiff's arguments in this regard are baseless.  (*Id.* at 21.)

The evaluation as to what weight to give a medical opinion is the same whether the opinion is from a non-examining or examining source.  20 C.F.R. §§ 404.1527(f), 416.927(f) (2004).  The factors considered are listed above.  (*See supra* at 22-23.)  One of those factors is "supportability."  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (2004).  "[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."  *Id.*

Here, the non-examining physicians indicated that plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry up to ten pounds, and sit and stand and/or walk (with normal breaks) for a total of six hours in an eight hour work day; otherwise, plaintiff had no other limitations.  (T. at 237-244.)  However, the report contains no explanations for these conclusions; the report only contains a notation that plaintiff had surgery and was healing well with a decrease in his symptoms.  (T. at 238.)  Despite the lack of explanation, the ALJ cited the non-examining physicians' opinions from their RFC Assessment and found that "although the [plaintiff's] impairments are to be considered the [plaintiff] still had the residual functional

capacity and capability to perform light work."[6]  (T. at 17, citation omitted.)  Because the ALJ

afforded these unexplained opinions weight (by citing them in his decision and failing to cite to

Dr. Rhode's office's opinions), remand is necessary.

           3.    <u>Dr. Gingold</u>

      Plaintiff also argues that the ALJ erred in failing to properly consider all of Dr. Gingold's

reports.  (Dkt. No. 9 at 17-18.)  Plaintiff contends that the ALJ cited the unfavorable opinions

and ignored the opinions favorable to a finding of disability, specifically Dr. Gingold's

assessment that after surgery, aside from the ability to walk, "'the rest of his limitations remain.'"

(Dkt. No. 9 at 18 (quoting T. at 220.))

      Because the Court is recommending remand for consideration of what weight to afford to

the opinions of plaintiff's physicians,[7] the Court will likewise recommend that upon remand the

ALJ re-evaluate Dr. Gingold's opinions and accord them the appropriate weight.[8]

**C.**    **Residual Functional Capacity**

      Plaintiff also argues that the ALJ's finding that plaintiff retained the RFC to perform light

---

     [6]  As explained further below, Dr. Rhode's office's RFC Assessment contained greater limitations
than the non-examining physicians' RFC Assessment.  (T. at 253-256, 237-244.)  Dr. Rhode's office
opined that plaintiff could only **occasionally** lift and carry up to twenty pounds.  (T. at 253.)  The non-
examining physicians opined that plaintiff could **occasionally** lift and carry up to twenty pounds and
**frequently** lift and carry up to ten pounds.  (T. at 238.)  In order to be able to perform light work, one
must be able to **frequently** lift twenty pounds and **frequently** carry up to ten pounds.  20 C.F.R. §
404.1567(b) (2004) (emphasis added).

     [7]  The Court notes that the ALJ's decision wholly fails to mention the medical evidence and
opinions of Drs. Shende, Masten, Lapointe, and Amjad Sheik.

     [8]  Notes from plaintiff's fourth and eighth visits with Dr. Gingold's office may be missing from
the record.  Plaintiff's December 24, 1998 visit was "Visit # 3 of 3" and plaintiff's February 1, 1999 visit
was "Visit # 5 of 5."  (T. at 220, 221.)  Likewise, plaintiff's April 27, 1999 visit was "Visit # 7 of 7" and
plaintiff's June 22, 1999 visit was "Visit # 9 of 9."  (T. at 249, 251.)

work is not supported by substantial evidence. (Dkt. No. 9 at 18.) Defendant contends that there

is substantial evidence to support such a finding. (Dkt. No. 11 at 21.)

      In rendering a RFC determination, the ALJ must consider objective medical facts,

diagnoses, and medical opinions based on such facts, as well as plaintiff's subjective symptoms,

including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)

(2004); *see also Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999) (citing *LaPorta v.*

*Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). RFC can only be established when there is

substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*,

737 F. Supp. at 183. Furthermore, an ALJ must specify the functions plaintiff is capable of

performing, and may not simply make conclusory statements regarding a plaintiff's capacities.

*Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998), *LaPorta v. Bowen*, 737 F. Supp.

at 183.

      There are two RFC Assessments contained in the record – one completed by Dr. Rhode's

office and the other by Drs. Putcha and Seok, non-examining, non-treating physicians. In his

October 14, 1999, RFC Assessment, Dr. Rhode and/or Mr. Stock stated that plaintiff could

"occasionally" lift and carry up to twenty pounds, but never lift or carry anything more. (T. at

253.) These findings were based upon plaintiff's chronic low back pain and tenderness. (*Id.*)

Furthermore, Dr. Rhode and/or Mr. Stock opined that plaintiff could sit for two total hours out of

an eight hour work day, but only one hour at a time without interruption. (T. at 254.) Plaintiff

could stand and walk for three hours out of an eight hour work day, but only one hour at a time

without interruption. (*Id.*) Again, this was based upon plaintiff's chronic low back pain. (*Id.*)

Plaintiff's use of his hands and feet were not affected, nor was plaintiff's ability to reach, handle,

feel, push/pull, hear, and speak.  (T. at 254-255.)  Plaintiff could "occasionally" climb, balance,

stoop, crouch, kneel, and crawl due to his chronic low back pain, but had no environmental

restrictions.  (T. at 255-256.)

Drs. Putcha and Seok's RFC Assessment was completed on February 18, 1999.  (T. at

237-244.)  Drs. Putcha and Seok opined that plaintiff could occasionally lift and/or carry up to

twenty pounds and frequently lift and/or carry up to ten pounds.  (T. at 238.)  Drs. Putcha and

Seok also indicated that plaintiff could sit and stand and/or walk (with normal breaks) for a total

of about six hours in an eight hour work day.  (*Id.*)  Plaintiff had an unlimited ability to push

and/or pull and Drs. Putcha and Seok stated that plaintiff had no postural, manipulative, visual,

communicative, or environmental limitations.  (T. at 239-241.)  In other words, plaintiff had an

unlimited ability to climb, balance, stoop, kneel, crouch, crawl, reach, handle (gross and fine

manipulation), feel, hear, speak, and endure various environmental conditions including, *inter*

*alia*, extreme cold and heat, wetness, humidity, and vibration.  (*Id.*)

Based upon the testimony given at plaintiff's hearing and the medical evidence contained

in the record, the ALJ found that plaintiff retained the RFC to perform light work.  (T. at 18.)

Specifically, the ALJ stated that "[t]he evidence supports a finding that he is able to lift and carry

up to 20 pounds occasionally and up to ten pounds on a regular basis, sit up to 2 hours and stand

or walk for up to 6 hours in an 8 hour day.  [Plaintiff] has no significant nonexertional limitations

which narrow the range of work he can perform"  (*Id.*)

As stated above, this Court is recommending remand to determine whether the opinions

contained in one of the RFC Assessments are those of Dr. Rhode or Mr. Stock and, accordingly,

what weight to accord the RFC Assessment.  This is of particular import as explained above (*see*

*supra* footnote 15), because Dr. Rhode's office's RFC Assessment contained greater limitations than the non-examining physicians' RFC Assessment.  Thus, once it has been determined what weight to afford Dr. Rhode's office's RFC Assessment, the ALJ will have available to him clarified information which will enable him to accurately determine what RFC plaintiff retains. Accordingly, remand is necessary.

### D.    Pain/Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. §§ 404.1529, 416.929 (2004); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), 416.929(a) (2004).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  20 C.F.R. §§ 404.1529(c), 416.929(c) (2004).

When the objective evidence alone does not substantiate the intensity, persistence, or

limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).  The Court notes that an ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Here, the ALJ acknowledged that he must consider plaintiff's subjective allegations and that plaintiff's "capability to perform these activities [as testified to at the hearing] would indicate that the [plaintiff] may, in fact, be limited to some degree by his impairments."  (T. at 18.)  However, the ALJ did not set forth his reasons for finding that plaintiff was "not entirely credible" with sufficient specificity in order for this Court to determine whether the ALJ's decision is supported by substantial evidence.  The ALJ merely restated plaintiff's testimony regarding his daily activities and then concluded that plaintiff's allegations of total disability were

19

inconsistent with the RFC Assessments and medical evidence contained in the record.  (*Id.*)

Consequently, this Court recommends remand for the purpose of a proper evaluation of plaintiff's subjective complaints about pain.

### III.  <u>Conclusion</u>

Where, as here, there are gaps or inconsistencies in the administrative record, with no sufficiently complete proof that the plaintiff is disabled, the appropriate relief is remand for further or proper evaluation of the record.  *Rosa v. Callahan*, 168 F.2d at 82-83.  Therefore, this case must be remanded for further evaluation.

Upon remand and consistent with the above, the ALJ shall, *inter alia*: (1) consider and weigh the medical evidence and opinions of Drs. Shende, Masten, Sheik, Gingold and Lapointe; (2) consider the combined effect of Plaintiff's irritable bowel syndrome and low back pain on his ability to work; (3) consider the medical evidence from Dr. Rhode's office and determine what weight the evidence should be afforded (particularly the October 14, 1999 RFC Assessment signed by Mr. Stock and apparently co-signed by Mr. Stock on behalf of Dr. Rhode); (4) if upon remand the ALJ affords the opinions of Drs. Putcha and Seok weight, the ALJ is to discuss the "supportability" of the opinions of the non-examining physicians; (5) determine Plaintiff's RFC, after deciding what weight to afford the RFC Assessments by Dr. Rhode's office and Drs. Putcha and Seok; and (6) properly evaluate, pursuant to the two-step analysis discussed above, plaintiff's subjective complaints about pain.

This, of course, is not an exhaustive list of what the ALJ must consider and evaluate on remand.  For example, on remand, if the ALJ determines that the testimony of a vocational expert is needed, the Court assumes that such testimony will be procured.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to

sentence four of 42 U.S.C. § 405(g),[9] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED.

R. CIV. P. 72, 6(a), 6(e).


Dated: May 17, 2005
      Syracuse, New York

                                  George H. Lowe
                                 United States Magistrate Judge

---

[9]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2004).